**UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF MICHIGAN**
**SOUTHERN DIVISION**

JEFFERSON VILLAGE ENTERPRISES, INC.,

    Plaintiff,

v.                                                                                    Case No. 10-14638

UNITED STATES OF AMERICA and
THOMAS J. VILSACK,

    Defendants.
_____/

**OPINION AND ORDER GRANTING THE GOVERNMENT'S MOTION TO DISSOLVE TEMPORARY RESTRAINING ORDER AND STAYING ENFORCEMENT OF DISQUALIFICATION PURSUANT TO 7 U.S.C. § 2023(a)(17)**

The Government has moved the court to dissolve a state court's temporary restraining order. The matter has been fully briefed, and the court held a statutorily required hearing on February 9, 2011. While the court finds the administrative penalty at issue here should not be enforced pending a final judicial determination in this matter, the court will nonetheless grant the Government's motion, as the state court's order should be dissolved. The court will, however, impose its own stay of the administrative action pursuant to 7 U.S.C. § 2023(a)(17).

## I. BACKGROUND

Plaintiff is a gas station and convenience store in Detroit, Michigan, and a retailer-participant in the Supplemental Nutrition Assistance Program ("SNAP"). SNAP is a program administered by the United States Department of Agriculture ("USDA") that provides assistance to low-income individuals and households in the form of subsidies for food-purchase expenses. SNAP benefits may be exchanged for qualifying goods at

SNAP-authorized retailers. Retailers that violate SNAP regulations are subject to sanctions, which can include a civil money penalty ("CMP"), or suspension or termination from SNAP.

The Government alleges Plaintiff violated SNAP regulations on multiple occasions by selling ineligible goods. The Government asserts the USDA first alerted Plaintiff to the sale of ineligible goods in January 2007 by issuing a warning letter. (Mot. 1-2.) SNAP investigations from December 2008 to March 2009 revealed, the Government states, that on four out of seven undercover attempts, Plaintiff sold a confidential Government informant ineligible goods, including coffee filters, nail polish remover, paper plates, bags, forks, and baking cups. (*Id.* at 2.) On the other three occasions, the Government avers Plaintiff refused to consummate a proposed illegal transaction. (*Id.*)

The USDA's Food and Nutrition Service ("FNS") documented these findings in a report and mailed Plaintiff a letter dated March 24, 2009, indicating that Plaintiff had been charged with SNAP violations. (*Id.* at 2-3.) After an April 9, 2009, verbal response, FNS disqualified Plaintiff from SNAP for six months. (*Id.* at 3.) Plaintiff requested an administrative review of that decision on May 1, 2009, and the FNS upheld the disqualification on October 19, 2010. (*Id.*)

Plaintiff then filed this suit on November 18, 2010, in Wayne County Circuit Court seeking judicial review pursuant to 7 U.S.C. § 2023(a)(13). Upon application, that court issued a temporary restraining order. Before the scheduled hearing on that order was held, the Government removed the case to this court.

**II. STANDARD**

A retail store subject to sanction for violating SNAP may seek judicial review of a final administrative determination. 7 U.S.C. § 2023(a). The court undertakes a *de novo* review of the administrative decision. 7 U.S.C. § 2023(a)(15). A plaintiff pursuing review of an administrative decision may apply for a stay of the enforcement of the decision pending review by the court. The test for whether to issue a stay, however, differs from that used to determine whether to issue an injunction under Federal Rule of Civil Procedure 65.

> During the pendency of such judicial review, or any appeal therefrom, the administrative action under review shall be and remain in full force and effect, unless on application to the court on not less than ten days' notice, and after hearing thereon and a consideration by the court of the applicant's likelihood of prevailing on the merits and of irreparable injury, the court temporarily stays such administrative action pending disposition of such trial or appeal.

7 U.S.C. § 2023(a)(17). The parallel provision from the Code of Federal Regulations sets out a slightly different standard:

> During the pendency of any judicial review, or any appeal therefrom, the administrative action under review shall remain in force unless the firm makes a timely application to the court and after hearing thereon, the court stays the administrative action after a showing that irreparable injury will occur absent a stay and that the firm is likely to prevail on the merits of the case.

7 C.F.R. § 279.7(d). Unlike the standard for issuing a Rule 65 injunction, the court does not consider substantial harm to others or the public interest; only likelihood of success on the merits and the risk of irreparable harm are used to determine whether to issue the stay. *See Alkabsh v. United States*, No. 10-02503, 2010 WL 3314160, at *4 & n.3 (W.D. Tenn. Aug. 24, 2010).

3

The statutory provision directs the court to "consider[] . . . the applicant's likelihood of prevailing on the merits and of irreparable injury," 7 U.S.C. § 2023(a)(17), while the administrative provision states the court may only issue a stay "after a showing that irreparable injury will occur absent a stay and that the firm is likely to prevail on the merits," 7 C.F.R. § 279.7(d). Thus, the administrative provision is narrower, requiring an affirmative showing of likelihood of success and irreparable harm, while the statutory provision lends the court discretion, allowing the court to determine whether a stay should issue after a consideration of these two factors.

### III. DISCUSSION

As an initial matter, the pending motion comes before the court in a procedural posture different from that contemplated by the statutory and administrative provisions discussed above. Plaintiff has not applied to the court for a stay, but instead the Government has moved the court to dissolve a temporary restraining order issued by a state court prior to removal. Despite this variance, the substantive question before the court is the same—whether the administrative action should be stayed pending review of the decision—and therefore the court cannot find a reason not to apply the statute in this posture. The court holds a stay is proper, and so will dissolve the state court's order and will implement its own stay pursuant to § 2023(a)(17).

As noted above, the administrative regulation is more restrictive in scope than is the congressionally-enacted statute. Section 2023(a)(17) directs the court to weigh two factors, while § 279.7(d) instructs that a stay may only issue after an affirmative showing of those same two factors.

4

Where an administrative regulation has interpreted a statute, the court conducts a two-step inquiry in construing the statute. *Terrell v. United States*, 564 F.3d 442, 449 (6th Cir. 2009) (citing *Chevron, U.S.A., Inc. v. Natural Res. Def. Council*, 467 U.S. 837 (1984)). "If the statute is unambiguous, the unambiguous meaning controls. If the statute is ambiguous, then we defer to the agency's interpretation of the statute if it is permissible." *Id.* (citation omitted).

The statute here is not ambiguous. The plain meaning of the statute directs the court to consider likelihood of success on the merits and irreparable injury. To consider is "[t]o view or contemplate attentively, to survey, examine, inspect, scrutinize." Oxford English Dictionary (2d ed. 1989). Notably, "to find" or the like is not among the definitions of consider. The administrative regulation is thus at odds with the text of Congress's statute. It only permits a court to issue a stay after a showing of likelihood of success and irreparable harm, rather than allowing a court to weigh the factors.

In addition, even if the statute is ambiguous, the regulation's interpretation thereof is neither permissible nor reasonable. Ambiguous statutes are interpreted *in pari materia*. *See United States v. Graham*, 622 F.3d 445, 466 (6th Cir. 2010) ("Statutes are considered to be *in pari materia* when they relate to the same person or thing, to the same class of persons or things, or have the same purpose or object. Each section of a law which deals with the same subject matter must be read *in pari materia* with other sections on the same subject."). Under Rule 65, a court has discretion, after weighing certain factors, to determine whether to issue an injunction. *E.g.*, *Int'l Dairy Foods Ass'n v. Boggs*, 622 F.3d 628, 635 (6th Cir. 2010) (quoting *Deja Vu of Cincinnati L.L.C. v. Union Twp. Bd. of Trs.*, 411 F.3d 777, 782 (6th Cir. 2005)) ("[T]he decision of

whether to grant a motion for a preliminary injunction is 'left to the sound discretion of the district court.'"). Courts also exercise discretion in determining whether to issue a stay pending appeal. *Scripps-Howard Radio, Inc. v. Fed. Commc'ns Comm'n*, 316 U.S. 4, 9-10 (1942); *see Nken v. Holder*, 129 S. Ct. 1749, 1756-57 (2009). These procedures and standards were those utilized when Congress drafted § 2023(a), and thus lead the court to the conclusion that Congress intended federal courts to issue § 2023(a)(17) stays in a manner reflective of that used in evaluating stays or injunctions in other contexts. Therefore, to read § 2023(a)(17) to require an affirmative showing of the two factors listed, rather than to allow a court to weigh the factors in a manner consistent with similar determinations of whether to issue an injunction, would be to depart from the long-understood role of courts of weighing facts on a case-by-case basis in order to discern whether a stay is necessary and appropriate to preserve the status quo during judicial review. *See Nken*, 129 S. Ct. at 1760 (quoting *Scripps-Howard*, 316 U.S. at 11) ("[W]e are loath to conclude that Congress would, 'without clearly expressing such a purpose, deprive the Court of Appeals of its customary power to stay orders under review.'").

Here, Plaintiff has not demonstrated a substantial likelihood of success on the merits. The Government relies on affidavits of confidential informants who, on multiple occasions, purchased SNAP-ineligible goods with SNAP benefits, and also on the declaration of James Walsh, an investigator with FNS. The Government has itemized receipts with the date, time, and location of purchase, as well as the warning letter it mailed to Plaintiff in January 2007. (Mot. 9 & Ex. B.) Plaintiff rejoins that it does not, and never did, carry the allegedly purchased SNAP-ineligible items. (Resp. 2.) Plaintiff

further argues that it never actually received the warning letter due to a change in ownership after it was sent. (*Id.*) While these factual questions ultimately must be answered by the court at trial, based on the record thus far the court cannot find that Plaintiff has demonstrated a substantial likelihood of success on the merits.

Plaintiff has, however, shown that irreparable harm is likely to result if a stay is not put into place. In general, lost revenue does not constitute irreparable harm because an award of damages at the end of a case, if appropriate, will make a party whole. That general proposition does not apply here for two reasons. First, the statute provides that the Government is not liable to a party for injury incurred while a lawsuit is pending. 7 U.S.C. § 2023(a)(18) ("If the disqualification is reversed through administrative or judicial review, the Secretary shall not be liable for the value of any sales lost during the disqualification period.").[1]

Second, Plaintiff has "alleged by its sworn complaint" that if the decision is not stayed, Plaintiff will lose 50% of its revenue stream, and likely be forced to close, causing Plaintiff's employees to lose their jobs. (Resp. 3-4.) Plaintiff has filed, at the court's invitation, documentation in support of its claim that it will suffer irreparable harm without a stay. In particular, Plaintiff's accountant states that "total sales generated from food stamps has a monthly percentage of almost 50% of the total non-taxable sales," and that "in order to cover the expenses for the station, [Plaintiff has] to have enough

---

[1] The sentence preceding the quoted sentence in § 2023(a)(18) refers only to permanent disqualification, and so it is possible that Congress intended the rule on liability to apply only where a stay is barred in cases of permanent disqualification. The court need not and therefore does not decide this issue, but the possibility that the liability rule is applicable in cases of temporary disqualification is sufficient to persuade the court that any financial loss could be irreparable.

7

sales from non-taxable product [sic]." An income statement shows the business operated at a net loss of $2,635.04 in 2010, and a non-taxable sales schedule indicates that over the past six months, SNAP purchases comprised approximately 43% of non-taxable sales, totaling more than $94,000. Plaintiff also appears to owe more than $43,000 in property taxes. Thus, further economic loss to Plaintiff could lead to the business closing or employees losing their jobs, and such harms are cognizable as irreparable. *See, e.g.*, *Warren v. City of Athens*, 411 F.3d 697, 711-12 (6th Cir. 2005); *Performance Unlimited, Inc. v. Questar Publishers, Inc.*, 52 F.3d 1373, 1382-83 (6th Cir. 1995).

Moreover, the court finds the statutory scheme would be frustrated were the court not to impose a stay in a case such as this one. "[I]t 'has always been held, . . . that as part of its traditional equipment for the administration of justice, a federal court can stay the enforcement of a judgment pending the outcome of an appeal.'" *Nken*, 129 S. Ct. at 1754 (quoting *Scripps-Howard*, 316 U.S. at 9). The Government does not dispute that Congress provided for judicial review of administrative actions. Here, the action taken was to disqualify Plaintiff for six months. The court has entered a standard scheduling order anticipating the trial on this matter would take place in May 2011, at the earliest. Were the court to deny the stay, and were Plaintiff to prevail, Plaintiff would have been subject to more than half of the disqualification period by the time the decision issued. If the trial is delayed, it is possible Plaintiff would serve the entire disqualification period before an opinion is filed, rendering this action moot. That the statute possibly bars the court from awarding damages to Plaintiff in the event it prevails compounds the concern of mootness.

In light of Plaintiff's showing of irreparable harm and in order to provide Plaintiff with the meaningful judicial review contemplated by Congress, the court will issue a stay.  The court will, however, grant the Government's motion, as it would be improper for the state court temporary restraining order to continue to enjoin the Government. The state court is no longer presiding over the matter, and temporary restraining orders should not have effect for an indefinite time period, see Fed. R. Civ. P. 65(b)(2). Further, while similar in effect, a stay is not an injunction.  An injunction orders a party to do something, or to refrain from doing something, whereas a stay temporarily stops an order from taking effect.  See Nken, 129 S. Ct. at 1757-58.  Therefore, the restraining order must be dissolved, and a statutory stay issued.

### IV. CONCLUSION

Accordingly,  IT IS ORDERED that the Government's "Motion to Dissolve Temporary Restraining Order" [Dkt. # 4] is GRANTED.

IT IS FURTHER ORDERED that the Government is STAYED from disqualifying Plaintiff from SNAP, until further order of the court, pursuant to 7 U.S.C. § 2023(a)(17).


      s/Robert H. Cleland  
      ROBERT H. CLELAND  
      UNITED STATES DISTRICT JUDGE

Dated:  February 24, 2011


I hereby certify that a copy of the foregoing document was mailed to counsel of record on this date, February 24, 2011, by electronic and/or ordinary mail.

       s/Lisa Wagner
Case Manager and Deputy Clerk
(313) 234-5522

S:\Cleland\JUDGE'S DESK\C2 ORDERS\10-14638.JEFFERSONVILLAGE.GrantDissolveTRO.jmp.wpd